GERARD SCHULTZ,

Plaintiff,

VERSUS

TRIBUNE ND, INC. F/K/A NEWSDAY, INC.,

Defendant.

———————

MEMORANDUM AND ORDER
December 8, 2010

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff Gerard Schultz ("plaintiff" or "Schultz") commenced this action in New York State Supreme Court, Suffolk County, against defendant Tribune ND, Inc., formerly known as Newsday, Inc. ("defendant" or "Newsday"), alleging that defendant violated his rights under New York State Human Rights Law Section 296(1)(a) when it terminated him from his employment with Newsday. Defendant removed the action to this Court, and plaintiff has moved to remand the case to state court. Defendant opposes plaintiff's motion to remand and, in turn, has filed a motion to dismiss plaintiff's Amended Complaint. For the reasons set forth herein, the Court concludes that plaintiff's claims are completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and, thus, defendant's removal of the action to federal court was proper. Accordingly, plaintiff's motion to remand is denied.[1]

---

[1] Plaintiff has not submitted any substantive arguments in opposition to defendant's motion to dismiss and, instead, has stated that "[i]t is plaintiff's position that defendant's motion to dismiss is inappropriate and academic until this Court determines that it has jurisdiction of this matter." (Reply Affirmation of Joseph O. Giaimo in Further Support of Motion to Remand and In Opposition to Motion to Dismiss ("Giaimo Aff.") ¶ 3.) Although plaintiff is correct that the Court must resolve the motion to remand before reaching defendant's motion to dismiss, plaintiff nevertheless could have submitted substantive arguments in opposition to defendant's motion at the same time that it submitted arguments in support of its motion to remand. In any event, because the motion to

## I. BACKGROUND

### A. Facts

On June 3, 2010, Schultz filed an Amended Complaint against Newsday in an action pending in New York State Supreme Court, Suffolk County, alleging that Newsday discriminated against him in violation of New York State Human Rights Law ("NYSHRL") Section 296(1)(a) and seeking $1.6 million in damages. (*See* Am. Compl. ¶ 26, Prayer for Relief ¶ (a); Notice of Removal ¶¶ 1-2.) Specifically, Schultz claims that Newsday discriminated against him "by terminating him solely because of his absence from employment while on disability in order to deprive him of his short term and long term disability benefits." (Am. Compl. ¶ 25.)

As set forth in the Amended Complaint,[2] Newsday hired plaintiff as a truck helper in or about July 1980. (*Id.* ¶ 6.) Since that time, Newsday has continuously employed plaintiff in a variety of positions, including as road foreman, assistant foreman of night operations, and, finally, as sales manager of Long Island Single Copy Sales, a position to which plaintiff was promoted in or about 1996. (*Id.*) On or about January 19, 2001, plaintiff severely injured his back in an automobile accident unrelated to his employment. (*Id.* ¶ 7.) Although plaintiff returned to work on January 26, 2001, he had to undergo spinal surgery as a result of his injuries on May 29, 2002, and was unable to work until approximately November 1, 2002. (*Id.* ¶¶ 8-9.) When plaintiff returned to his job at Newsday, he was able to "resume[] his normal employment duties and activities" despite continuing pain in his back. (*Id.* ¶ 9.)

Subsequently, on August 9, 2004, plaintiff was required to undergo a second corrective spinal surgery, after which he went on short-term medical leave from the date of the surgery until February 24, 2005. (*Id.* ¶ 11.) During this time, plaintiff was entitled to receive his full salary pursuant to the terms of Newsday's Disability Plan coverage ("Disability Plan").[3] (*Id.* ¶ 14.) Notably, under the terms of the Disability Plan, if plaintiff was deemed permanently disabled by the end of his short-term medical leave, he would be eligible to receive long-term disability benefits totaling $936 a week, plus additional benefits, for the rest of his life. (*Id.* ¶¶ 15, 28.)

On or about September 2, 2004, approximately one month after plaintiff's short-term medical leave had begun, Newsday informed plaintiff that he had been terminated. (*Id.* ¶ 13.) As explained in a letter from Newsday dated September 3, 2004, plaintiff was fired based on his "participation in fraudulent circulation practices, [his] failure to be forthright with

---

dismiss has not been fully briefed, the Court will only address the motion to remand in this Opinion and has set a separate briefing schedule for plaintiff to respond to defendant's motion.

[2] Unless otherwise indicated, the following facts are taken from the Amended Complaint and are not findings of fact by the Court. For purposes of plaintiff's motion to remand, all non-jurisdictional facts alleged in the Amended Complaint are presumed to be true, *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 677 (S.D.N.Y. 1996), and any doubts as to federal jurisdiction will be resolved against removability. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

[3] The Court notes that, according to the Amended Complaint, plaintiff's short-term disability benefits coverage began on or about August 18, 2004, rather than on August 9, 2004, the date of plaintiff's surgery. (Am. Compl. ¶ 14.) In any event, this distinction is not relevant for purposes of the pending motion.

company attorneys during the investigation, and [his] violations of the company's Code of Conduct." (*Id.* Ex. B.) Plaintiff, however, claims that "the allegations in the termination letter were untrue, wrongful . . . and made with the fraudulent intent of terminating plaintiff's employment while on disability and terminating plaintiff's disability benefits." (Am. Compl. ¶ 19.) Plaintiff states that he was "absolutely truthful" with Newsday's attorneys (*id.* ¶ 21), that he "never engaged in wrongful conduct" (*id.* ¶ 22), and that the "sole reason" Newsday terminated him "while he was on disability . . . was to prevent him while disabled from receiving short term disability benefits for twenty six (26) weeks and life time long term disability benefits."[4] (*Id.* ¶ 24.)

On or about June 24, 2005, plaintiff filed a complaint against Newsday with the New York State Division of Human Rights ("Division of Human Rights") asserting violations of the NYSHRL, the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA"), and the Age Discrimination in Employment Act ("ADEA"). (Jade L. Fuller Affirmation In Support of Plaintiff's Motion to Remand ("Fuller Aff.") ¶ 11.) On April 28, 2006, the Division of Human Rights dismissed plaintiff's complaint on the grounds of "administrative convenience" to allow him to "pursue this matter by litigation in Federal Court." (*Id.* Ex. B at 1.)

B. Prior Action

On September 1, 2006, Schultz filed a complaint against Newsday and a number of other defendants, alleging violations of the FMLA, the ADA, ERISA, and the NYSHRL. (Fuller Aff. ¶ 13.) The Honorable Frederick Block dismissed all of plaintiff's federal claims on summary judgment in a Memorandum and Order dated October 7, 2009. *See Schultz v. Tribune Co., Inc.*, No. 06-cv-4800 (FB) (RER), 2009 WL 3246737 (E.D.N.Y. Oct. 7, 2009) ("*Schultz I*"). A review of Judge Block's opinion reveals that plaintiff's factual allegations in *Schultz I* differ from those raised in the instant case. In particular, it appears that plaintiff's primary allegation in *Schultz I*—which has not been asserted in the current case—was that he was fired "in retaliation for his role as a 'whistleblower' on a scheme whereby the newspaper reported inflated circulation figures in order to charge higher rates to advertisers." *Id.* at *1. Indeed, Judge Block specifically noted that plaintiff "consistently and ardently maintain[ed] that his termination was in retaliation for his role as a 'whistleblower,' and not on account of his taking medical leave (FMLA), his disability (ADA), or his entitlement to disability benefits (ERISA)." *Id.* Consequently, because plaintiff had failed to connect his termination to any of his rights under the relevant statutes, Judge Block granted Newsday's motion for summary judgment as to plaintiff's federal claims in its entirety. *Id.*

---

[4] Under the Disability Plan, once an individual's employment has been terminated, that individual is no longer entitled to either short-term or long-term disability benefits. (*See* Am. Compl. Ex. E (letter from Newsday dated October 26, 2004 explaining that plaintiff was not entitled to disability benefits after his September 2, 2004 termination).)

As to plaintiff's remaining state NYSHRL claim,[5] Judge Block declined to exercise supplemental jurisdiction over that claim and dismissed it without prejudice to renewal in state court. *Id.* at *4-5.

C. Procedural History

On June 10, 2010, defendant removed the current action to this Court on the basis of federal question jurisdiction. (Notice of Removal ¶ 3.) Plaintiff filed a motion to remand on July 26, 2010. Defendant filed its opposition to plaintiff's motion along with a cross-motion to dismiss on September 10, 2010. Plaintiff filed its reply in support of its motion and in opposition to defendant's motion on October 1, 2010. Defendant filed its reply on October 11, 2010. The Court heard oral argument on December 3, 2010, at which time the Court denied plaintiff's motion to remand and stated that a written opinion, as set forth herein, would follow.

II. MOTION TO REMAND[6]

A. Removal Jurisdiction Standard

Generally, a case may be removed from state court to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)); *see also* 28 U.S.C. § 1441. If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (internal quotation marks and citations omitted). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the

---

[5] As described by Judge Block, plaintiff's NYSHRL claim was based upon Newsday's refusal to accommodate plaintiff's disability and upon the claim that Newsday "systematically terminat[ed] [plaintiff's] employment because of such disability." *Schultz I*, 2009 WL 3246737, at *4.

[6] As indicated *supra* in footnote 1, the Court will address plaintiff's motion to remand before addressing defendant's motion to dismiss, because the remand motion challenges the Court's jurisdiction to hear this case. If the Court does not have jurisdiction, it does not have the power to decide defendant's motion. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("Because a holding that the district court lacked removal jurisdiction would end our inquiry, we first address the district court's denial of [plaintiff's] motion to remand the case to state court for lack of jurisdiction."); *see also Cotter v. Milly LLC*, No. 09 Civ. 04639 (PGG), 2010 WL 286614, at *2 (S.D.N.Y. Jan. 22, 2010) ("Because the issue of proper removal involves this Court's subject matter jurisdiction, it must be decided prior to [defendant's] motion to dismiss under Rule 12(b)(6).").

4

independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991)); *accord Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2006).

In determining whether federal subject matter jurisdiction exists, a court may examine only the "well-pleaded" allegations in the complaint and, consequently, "must disregard allegations that a well-pleaded complaint would not include [such as] allegations about anticipated defenses." *Sullivan v. Am. Airlines*, 424 F.3d 267, 271 (2d Cir. 2005). Thus, under this doctrine, known as the "well-pleaded complaint rule," a federal court has federal question jurisdiction over an action "only if 'plaintiff's statement of his own cause of action shows that it is based' on federal law." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (quoting *Vaden v. Discover Bank*, --- U.S. ----, 129 S.Ct. 1262, 1275 (2009) and citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Thus, the plaintiff typically is deemed "the master of his complaint and is free to avoid federal jurisdiction by 'pleading only state claims even where a federal claim is also available.'" *Id.* (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)). Even if such state-law claims involve a federal element, the mere presence of such an element does not automatically create federal jurisdiction. *See, e.g.*, *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 701 (2006) (explaining that "it takes more than a federal element 'to open the 'arising under' door'" (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005))); *Ins. Corp. of N.Y. v. Monroe Bus Corp.*, 491 F. Supp. 2d 430, 434 (S.D.N.Y. 2007) ("The 'mere presence' of a federal issue does not . . . create federal question jurisdiction over a state cause of action." (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986))).

However, under the "artful-pleading doctrine, a corollary to the well-pleaded complaint rule, . . . a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." *Sullivan*, 424 F.3d at 271. Under such circumstances, "courts look beyond the face of an 'artfully pled' complaint to determine whether plaintiff has 'cloth[ed] a federal law claim in state garb' by pleading state law claims that actually arise under federal law." *Romano*, 609 F.3d at 519 (quoting *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986)). If the court determines that a complaint has, in fact, been artfully pleaded, it may uphold a defendant's removal of the case to federal court "even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).

Although the exact contours of the artful pleading doctrine within the Second Circuit are unclear,[7] both the Supreme Court and the

---

[7] In *Sullivan*, 424 F.3d at 272 n.4, the Court of Appeals noted that "[t]he precise scope of the artful-pleading doctrine is not entirely clear." On the one hand, in a prior case, the Second Circuit had relied upon the artful pleading doctrine "to support federal-court jurisdiction where complete preemption did not apply," but where the court nonetheless construed "plaintiff's state-law contract claims . . . as asserting rights arising only under federal tariffs." *Id.* (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998)). On the other hand, the Eighth Circuit has held that "the artful-pleading doctrine and complete-preemption

5

Second Circuit have explicitly held that the doctrine "allows removal where federal law *completely preempts* a plaintiff's state-law claim." *Id.* (emphasis added); *see also Sullivan*, 424 F.3d at 272 ("The artful-pleading doctrine includes within it the doctrine of complete preemption."). Indeed, the Court of Appeals has described that the "classic application" of this doctrine occurs where, as in this case, a court is presented with the possible "federal preemption of state law." *Travelers Indem. Co.*, 794 F.2d at 758. In most cases, preemption may be raised only as a defense and is precisely the type of issue that would not be included in a "well pleaded" complaint and, therefore, should not be considered by a federal court in evaluating the existence of federal subject-matter jurisdiction. *See Caterpillar*, 482 U.S. at 393 ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."); *Sullivan*, 424 F.3d at 272-73 ("Many federal statutes . . . will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under state law. Ordinary defensive preemption comes in three familiar forms: express preemption, conflict preemption, and field preemption. The Supreme Court has left no doubt, however, that a plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption." (internal citations omitted)). However, in certain limited cases, a federal statute is deemed to have so completely occupied a field that any state-law claims that fall within its scope are necessarily transformed, for jurisdictional purposes, into federal claims that, accordingly, may be removed to federal court. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court."); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." (internal citation omitted)); *Sullivan*, 424 F.3d at 272 ("Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e. completely preempted."). In

---

doctrines are coextensive and that a federal court may therefore construe a plaintiff's state-law suit as raising a federal claim only where that claim arises under a completely preemptive statute." *Id.* (citing *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991)). The *Sullivan* Court declined to resolve this conflict, however, because that case raised only the issue of complete preemption, which the Supreme Court clearly "described as falling within the artful-pleading doctrine." *Id.* Likewise, this Court need not "trace the artful-pleading doctrine's outer boundaries," *id.*, because, as in *Sullivan*, the Court has been confronted only with the question of whether ERISA has completely preempted plaintiff's state-law claims.

fact, "[w]hen a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Sullivan*, 424 F.3d at 272. ERISA is one of the few federal statutes recognized by the Supreme Court as having "the requisite extraordinary preemptive force to support complete preemption." *Id.* However, complete preemption under ERISA is not without limits, and, in fact, not all claims that fall within the purview of ERISA are completely preempted such that they can be removed to federal court despite their purported state-law nature. The contours of the ERISA preemption doctrine are described in greater detail *infra*.

B. ERISA Preemption Doctrine

Section 514(a) of ERISA provides, in relevant part, that "the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has noted that the "deliberately expansive language" of this clause, which is "conspicuous for its breadth . . . was designed to establish pension plan regulation as exclusively a federal concern." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (internal quotation marks and citations omitted). Under the terms of this provision, any state-law claims that "relate to" an employee benefit plan—or, in other words, have "a connection with or reference to such a plan"—are deemed expressly preempted by ERISA. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983); *see also Ingersoll-Rand*, 498 U.S. at 139 ("Under this broad common-sense meaning, a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." (additional quotation marks and citations omitted)). State statutory claims are preempted by ERISA where they "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (internal quotation marks and citation omitted). "As to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Id.* (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)); *see also Ingersoll-Rand*, 498 U.S. at 140 (finding that common law claim "that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund[] 'relate[d] to' an ERISA-covered plan within the meaning of § 514(a), and [was] therefore pre-empted").

There are, however, certain limited exceptions to the broad reach of ERISA's express preemption clause. For example, § 514(d) provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). The Supreme Court applied this exception in *Shaw*, 463 U.S. 85, to save certain portions of the New York State Human Rights Law from preemption under ERISA. Specifically, the Court in *Shaw* held that although the NYSHRL "relates to" ERISA-covered employee benefit plans—and thus falls within the scope of ERISA's broad preemption clause—§ 514(d) operates to limit preemption of the NYSHRL to those

7

provisions that "prohibit[] practices that are lawful under federal law." *Id.* at 96-97, 108. In other words, so long as the NYSHRL's prohibitions track those of federal laws, claims brought under the NYSHRL are not preempted by ERISA. In reaching this conclusion, the Supreme Court explained that "[g]iven the importance of state fair employment laws to the federal enforcement scheme, pre-emption of the Human Rights Law would impair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands." *Id.* at 102. Applying this logic to the age discrimination context, the Second Circuit in *Devlin v. Transportation Communications International Union*, 173 F.3d 94, 100 (2d Cir. 1999) held that the NYSHRL was "saved from preemption . . . to the extent that its protections track[ed] those of the [Age Discrimination in Employment Act]." In so holding, the court noted not only that the ADEA, like Title VII, provided for "'joint state/federal enforcement' of the rights protected by federal antidiscrimination law," but also that "age discrimination claims brought under the [NYSHRL] are governed by the same standards as those brought under the ADEA." *Id.* (alterations and citations omitted). Thus, under *Shaw* and *Devlin*, where a plaintiff presents a plausible discrimination claim that would be actionable not only under the NYSHRL but also under federal law, such claims are not subject to express preemption under § 514(a) of ERISA.

In any event, even in cases where express preemption does not apply, a state-law claim nevertheless may be preempted where "it conflicts directly with an ERISA cause of action." *Ingersoll-Rand*, 498 U.S. at 142. For example, in *Ingersoll-Rand*, the Supreme Court held that plaintiff's common law claims that his employer "wrongfully terminated [him] primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund" clearly fell within the ambit of § 510 of ERISA. *Id.* at 140, 142. Section 510, which regulates interference with rights protected by ERISA, provides, in pertinent part, that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The Court held that it had "no doubt that [plaintiff's] claim [was] prototypical of the kind Congress intended to cover under § 510," which "[b]y its terms . . . protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." *Ingersoll-Rand*, 498 U.S. at 143. In other cases involving conflict preemption, courts have looked to whether the existence of an ERISA-covered plan was merely incidental to a plaintiff's claims—thus rendering conflict preemption inapplicable—or, instead, whether the plan and the rights it created were the sole basis for plaintiff's cause of action. *See Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 676 (3d Cir. 2000) (holding that plaintiff's discrimination claim brought under New Jersey's anti-discrimination statute was completely preempted by ERISA where "depriving [plaintiff] of his retirement benefits was the motivating *purpose* for, and not merely a consequence of, his termination"); *Harris v. Mich. Consol. Gas Co.*, 117 F. Supp. 2d 642, 643-45 (E.D. Mich. 2000) (plaintiff's age discrimination claim was completely preempted where plaintiff alleged that the "sole purpose her employers had for discharging her was to prevent her from obtaining benefits under [defendant's] health and pension plans" and thus defendant's "intention to interfere with [plaintiff's] benefits [was] not incidental to

her claim" but instead "[was] her claim"); *cf. Nuzzo v. Verizon N.Y., Inc.*, No. 04-cv-3614 (DLC), 2004 WL 1872708, at *4 (S.D.N.Y. Aug. 19, 2004) (plaintiff's age discrimination claim was not preempted by § 510 where plaintiff made numerous allegations of discrimination and hostile work environment, including allegations about a comment made by a defendant regarding plaintiff's age, and, thus, "[plaintiff's] complaint [did] not allege that he was constructively discharged solely or even principally because [defendant] wished to avoid paying him benefits under its ERISA plan. Unlike *Ingersoll-Rand* and *Harris*, the existence of an ERISA plan is at best incidental to this dispute. [Plaintiff's] action would exist even if [defendant] did not maintain an ERISA plan.").

Nevertheless, the determination that a plaintiff's state-law claims are preempted by ERISA does not automatically render those claims completely preempted for removal purposes. Instead, for complete preemption to apply, the cause of action not only must be preempted by ERISA but also must fall within the scope of the civil enforcement provisions of ERISA § 502(a), 29 U.S.C. § 1132(a). *See Aetna Health*, 542 U.S. at 209 ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted. The preemptive force of ERISA § 502(a) is still stronger. . . . Hence, causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." (internal quotation marks and citations omitted)); *Metro. Life Ins. Co.*, 481 U.S. at 62-63, 67 (holding that "suit by a beneficiary to recover benefits from a covered plan . . . falls directly under § 502(a)(1)(B) of ERISA" and, therefore, was "necessarily federal in character" and subject to removal to federal court); *DaPonte v. Manfredi Motors Inc.*, 157 F. App'x 328, 330 (2d Cir. 2005) ("[C]omplete preemption with respect to ERISA has two prerequisites: (1) that the cause of action is based on a state law that is preempted by ERISA . . . and (2) that the cause of action is within the scope of the civil enforcement provisions of ERISA § 502(a)." (internal alterations, quotation marks, and citations omitted)). Section § 502(a)(1)(B) of ERISA empowers an ERISA-covered plan "participant" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The language of this provision is "relatively straightforward," and, thus, claims that seek to recover benefits owed under an ERISA-covered plan, or that seek to enforce or assert rights provided by such a plan, fall within the scope of § 502. *Aetna Health*, 542 U.S. at 210.

C. Discussion

Defendant argues that although plaintiff has labeled his claim as an NYSHRL discrimination action, plaintiff has, in fact, pled a benefits deprivation claim under § 510 of ERISA. (Def.'s Mem. of Law at 2-3, 6-7.) Accordingly, defendant contends that plaintiff's claims are completely preempted by ERISA and, thus, were properly removed to federal court. (*Id.* at 6-8.) Plaintiff, however, in his motion to remand, states that "[t]he allegations in the complaint do not seek any type of federal relief and seek solely to litigate the [NYSHRL] claim that was not adjudicated in federal court." (Fuller Aff. ¶ 21.) For the reasons set forth herein, the Court finds that plaintiff's claim that his employment was terminated solely for the purpose of depriving him of disability benefits falls

squarely within the scope of § 510 and § 502 of ERISA, and, accordingly, removal of the action to federal court was proper under the complete preemption doctrine.

First, a review of the Amended Complaint clearly demonstrates that plaintiff's only allegations relate to his claim that Newsday terminated his employment solely for the purpose of preventing him from receiving disability benefits. (*See* Am. Compl. ¶ 19 ("[T]he allegations in the termination letter were untrue, wrongful, fraudulent and made with the fraudulent intent of terminating plaintiff's employment while on disability and terminating plaintiff's disability benefits."); ¶ 24 ("The sole reason that Newsday terminated plaintiff . . . was to prevent him while disabled from receiving short term . . . and life time long term disability benefits."); ¶ 25 ("Newsday discriminated against plaintiff by terminating him solely because of his absence from employment while on disability in order to deprive him of his short term and long term disability benefits.").) Although plaintiff has labeled his claim as a disability discrimination claim arising under the NYSHRL, he has alleged no specific instances of discrimination that arise separate from his benefits termination claim, and, to the contrary, alleges that the "sole reason" Newsday terminated him was to deprive him of his disability benefits.[8] The Court finds that such a claim directly conflicts with an ERISA cause of action under § 510, which provides that it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Indeed, under factually analogous circumstances, the Third Circuit found that a claim brought under New Jersey's anti-discrimination law was, in fact, a § 510 ERISA claim where plaintiff alleged "'that depriving him of his retirement benefits was the motivating *purpose* for, and not merely a consequence of, his termination.'" *Wood*, 207 F.3d at 676. The court explained that references in the complaint to plaintiff's age were relevant "only insofar as [they] affected his eligibility for benefits," and were not sufficient to state a claim of age discrimination. *Id.* at 677. Similarly, in this case, plaintiff's references to his disability merely establish that he was eligible for disability benefits, not that he was discriminated against as a result of his disability. Indeed, each of plaintiff's references to his disability were made in conjunction with plaintiff's claims that Newsday terminated him to prevent him from receiving benefits. (*See* Am. Compl. ¶¶ 19, 24-25.) Thus, this Court agrees with the Third Circuit that, as alleged in plaintiff's Amended Complaint, "[a] claim of discharge based on a 'benefits-defeating' motive comes under Section 510 of ERISA." *Wood*, 207 F.3d at 677. This conclusion is also consistent with the Supreme Court's decision in *Ingersoll-Rand*, in which the Court held that it had "no doubt that [plaintiff's] claim was prototypical of

---

[8] The Court notes that, although plaintiff claims that he is merely seeking to litigate the NYSHRL claim that was dismissed without prejudice in his prior action, the NYSHRL claim raised here appears to be based on entirely different grounds than the NYSHRL claim previously raised by plaintiff. Specifically, plaintiff's prior NYSHRL claim was based upon Newsday's refusal to accommodate plaintiff's disability and upon the allegation that Newsday "systematically terminat[ed] [plaintiff's] employment because of such disability." *Schultz I*, 2009 WL 3246737, at *4. Here, in contrast, plaintiff has plainly stated that the "sole reason" Newsday terminated him was to avoid paying plaintiff's disability benefits. (Am. Compl. ¶ 24.)

10

the kind Congress intended to cover under § 510," 498 U.S. at 143, where plaintiff alleged that his employer "terminated [him] primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund." *Id.* at 140; *see also Harris*, 117 F. Supp. 2d at 645 ("[Plaintiff's] complaint states in several ways that the only reason for her discharge was that [her employer] wanted to avoid paying her benefits due under its employee benefit plans; she simply states her discharge was 'solely for the purpose of decreasing costs and expenses normally associated with older long-term employees.' Thus [her employer's] intention to interfere with her benefits is not incidental to her claim; it is her claim, and is thus a straightforward claim under § 510 of ERISA.").

Furthermore, plaintiff's claims clearly fall within the scope of ERISA's civil enforcement provision, § 502. As noted *supra*, § 502 allows an ERISA-covered plan "participant" or "beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). By the plain language of the statute, § 502 governs the enforcement of the requirements of § 510. *See* 29 U.S.C. § 1140 ("The provisions of [§ 502] of this title shall be applicable in the enforcement of this section."). Accordingly, "any state claim that falls within Section 510 is necessarily within Section 502," *Wood*, 207 F.3d at 677, and, therefore, is completely preempted by ERISA. *See Ingersoll-Rand*, 498 U.S. at 145 ("[T]he requirements of conflict pre-emption are satisfied in this case. Unquestionably, the Texas cause of action purports to provide a remedy for the violation of a right expressly guaranteed by § 510 and exclusively enforced by § 502(a). Accordingly we hold that when it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 510 of ERISA, due regard for the federal enactment requires that state jurisdiction must yield." (internal quotation marks and citation omitted)); *Harris*, 117 F. Supp. 2d at 645 (finding that plaintiff's claim that she was terminated in order to interfere with her benefits arose under § 510 of ERISA and fell within the enforcement provisions of § 502, thus requiring complete preemption). Thus, plaintiff's claims are completely preempted by ERISA and were properly removed to federal court.[9]

---

[9] Plaintiff argues that defendant's removal of this action was improper because "defendant is only claiming that this action is an ERISA action in order to raise a preclusion defense in the hopes of having this action . . . dismissed on those grounds." (Fuller Aff. ¶ 23.) However, this argument misapprehends the grounds asserted by defendant for removal. Regardless of whether defendant ultimately intends to raise a preclusion defense, defendants have not relied upon this defense as a basis for removal. Instead, defendant has removed this action under the doctrine of complete preemption, which applies in this case irrespective of any arguments that defendants may subsequently make to dismiss the action. Accordingly, plaintiff's argument on this point is inapposite. Indeed, plaintiff has not provided any arguments to this Court whatsoever as to why complete preemption does not require the exercise of federal jurisdiction in this case. Thus, for the reasons already outlined herein, plaintiff's motion to remand is denied.

### III. Conclusion

For the reasons set forth herein, defendant's removal of this action to federal court was proper under the complete preemption doctrine. Accordingly, plaintiff's motion to remand is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 8, 2010
    Central Islip, New York

\* \* \*

The attorneys for plaintiff are Joseph O. Giaimo and Jade L. Fuller of Giaimo Associates, LLP, 80-02 Kew Gardens Road, Kew Gardens, NY 11415. The attorneys for defendant are Cliff Fonstein, Eric Hoffman, and Adam McClay of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019.