UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-2652 (JFB) (ETB)
_____

GERARD SCHULTZ,

Plaintiff,

VERSUS

TRIBUNE ND, INC. F/K/A NEWSDAY, INC.,

Defendant.

_____

MEMORANDUM AND ORDER
September 14, 2011
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Gerard Schultz ("plaintiff" or "Schultz") commenced this action in New York State Supreme Court, Suffolk County, against defendant Tribune ND, Inc., formerly known as Newsday, Inc. ("defendant" or "Newsday"), alleging that defendant violated his rights under New York State Human Rights Law Section 296(1)(a) when it terminated him from his employment with Newsday. Defendant removed the action to this Court, and plaintiff moved to remand the case to state court. By Memorandum and Order dated December 8, 2010, the Court denied plaintiff's motion to remand, holding that plaintiff's claims were completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and therefore, defendant's removal of the action to federal court was proper.

Currently before the Court is defendant's motion to dismiss the Amended Complaint on the grounds that plaintiff's claims are precluded under the doctrine of *res judicata* and that any amendment to avoid this preclusion would be futile. For the reasons set forth herein, the Court grants defendant's motion to dismiss in its entirety and dismisses the Amended Complaint with prejudice.

I. BACKGROUND

A. Facts[1]

On June 3, 2010, Schultz filed an Amended Complaint against Newsday in an action pending in New York State Supreme Court, Suffolk County, alleging that Newsday discriminated against him in violation of New York State Human Rights Law ("NYSHRL") Section 296(1)(a) and seeking $1.6 million in damages. (*See* Am. Compl. ¶ 26, Prayer for Relief ¶ (a); Notice of Removal ¶¶ 1-2.) Specifically, Schultz claims that Newsday discriminated against him "by terminating him solely because of his absence from employment while on disability in order to deprive him of his short term and long term disability benefits." (Am. Compl. ¶ 25.)

As set forth in the Amended Complaint, Newsday hired plaintiff as a truck helper in or about July 1980. (*Id.* ¶ 6.) Since that time, Newsday has continuously employed plaintiff in a variety of positions, including as road foreman, assistant foreman of night operations, and, finally, as sales manager of Long Island Single Copy Sales, a position to which plaintiff was promoted in or about 1996. (*Id.*) On or about January 19, 2001, plaintiff severely injured his back in an automobile accident unrelated to his employment. (*Id.* ¶ 7.) Although plaintiff returned to work on January 26, 2001, he had to undergo spinal surgery as a result of his injuries on May 29, 2002, and was unable to work until approximately November 1, 2002. (*Id.* ¶¶ 8-9.) When plaintiff returned to his job at Newsday, he was able to "resume[] his normal employment duties and activities" despite continuing pain in his back. (*Id.* ¶ 9.)

Subsequently, on August 9, 2004, plaintiff was required to undergo a second corrective spinal surgery, after which he went on short-term medical leave from the date of the surgery until February 24, 2005. (*Id.* ¶ 11.) During this time, plaintiff was entitled to receive his full salary pursuant to the terms of Newsday's Disability Plan coverage ("Disability Plan").[2] (*Id.* ¶ 14.) Notably, under the terms of the Disability Plan, if plaintiff was deemed permanently disabled by the end of his short-term medical leave, he would be eligible to receive long-term disability benefits totaling $936 per week, plus additional benefits, for the rest of his life. (*Id.* ¶¶ 15, 28.)

On or about September 2, 2004, approximately one month after plaintiff's short-term medical leave had begun, Newsday informed plaintiff that he had been terminated. (*Id.* ¶ 13.) As explained in a letter from Newsday dated September 3, 2004, plaintiff was fired based on his "participation in fraudulent circulation practices, [his] failure to be forthright with company attorneys during the investigation, and [his] violations of the company's Code of Conduct." (*Id.* Ex. B.) Plaintiff, however, claims that "the allegations in the

---

[1] The following facts originally were set forth in the Court's December 8, 2010 Memorandum and Order denying plaintiff's motion to remand and are repeated herein for the purpose of clarity. The Court notes that the facts stated herein are taken from the Amended Complaint and are not findings of fact by the Court. Instead, the Court will assume the facts in the Amended Complaint to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

[2] The Court notes that, according to the Amended Complaint, plaintiff's short-term disability benefits coverage began on or about August 18, 2004, rather than on August 9, 2004, the date of plaintiff's surgery. (Am. Compl. ¶ 14.) In any event, this distinction is not relevant for purposes of the pending motion.

2

termination letter were untrue, wrongful . . . and made with the fraudulent intent of terminating plaintiff's employment while on disability and terminating plaintiff's disability benefits." (Am. Compl. ¶ 19.) Plaintiff states that he was "absolutely truthful" with Newsday's attorneys (*id.* ¶ 21), that he "never engaged in wrongful conduct" (*id.* ¶ 22), and that the "sole reason" Newsday terminated him "while he was on disability . . . was to prevent him while disabled from receiving short term disability benefits for twenty six (26) weeks and life time long term disability benefits."[3] (*Id.* ¶ 24.)

On or about June 24, 2005, plaintiff filed a complaint against Newsday with the New York State Division of Human Rights ("Division of Human Rights") asserting violations of the NYSHRL, the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA"), and the Age Discrimination in Employment Act ("ADEA"). (Jade L. Fuller Affirmation In Support of Pl.'s Mot. to Remand ("Fuller Aff.") ¶ 11.) On April 28, 2006, the Division of Human Rights dismissed plaintiff's complaint on the grounds of "administrative convenience" to allow him to "pursue this matter by litigation in Federal Court." (*Id.* Ex. B at 1.)

B. Procedural History

1. Prior Action

On September 1, 2006, Schultz filed a complaint against Newsday and a number of other defendants, alleging violations of the FMLA, the ADA, ERISA, and the NYSHRL. *See Schultz v. Tribune Co., Inc.*, No. 06-cv-4800 (FB) (RER), Docket Entry 1. The Honorable Frederick Block dismissed all of plaintiff's federal claims on summary judgment in a Memorandum and Order dated October 7, 2009. *See Schultz v. Tribune Co., Inc.*, No. 06-cv-4800 (FB) (RER), 2009 WL 3246737 (E.D.N.Y. Oct. 7, 2009) ("*Schultz I*"), *aff'd* 418 F. App'x 26 (2d Cir. 2011). As explained in this Court's prior opinion in this case, plaintiff's theory of his case in *Schultz I* differed from the theory raised in the instant case. In particular, although plaintiff alleged in *Schultz I* that his "termination occurred during a medical leave he took as of August 9, 2004," *id.* at *2, plaintiff's primary allegation in *Schultz I*—which has not been asserted in the current case—was that he was fired "in retaliation for his role as a 'whistleblower' on a scheme whereby the newspaper reported inflated circulation figures in order to charge higher rates to advertisers." *Id.* at *1. In granting defendant's motion for summary judgment on the claims under the FMLA, the ADA, and ERISA, Judge Block explained:

> Schultz must connect his termination to his rights under the aforementioned statutes in order to survive summary judgment. This he fails to do, since he consistently and ardently maintains that his termination was in retaliation for his role as a "whistleblower," and not on account of his taking medical leave (FMLA), his disability (ADA), or his entitlement to disability benefits

---

[3] Under the Disability Plan, once an individual's employment has been terminated, that individual is no longer entitled to either short-term or long-term disability benefits. (*See* Am. Compl. Ex. E (letter from Newsday dated October 26, 2004 explaining that plaintiff was not entitled to disability benefits after his September 2, 2004 termination).)

3

(ERISA). Therefore, . . . Newsday's motion is granted in its entirety.

*Id.* Furthermore, having dismissed all of plaintiff's federal claims, Judge Block declined to exercise supplemental jurisdiction over plaintiff's state-law NYSHRL claim, which was based upon Newsday's "refusal to accommodate [plaintiff's] disability, and for systematically terminating [plaintiff's] employment because of such disability." *Id.* at *4 (internal quotation marks and alterations omitted). Judge Block accordingly dismissed this claim without prejudice to renewal in state court. *Id.* at *5.

2. Motion to Remand

As noted *supra*, after defendant removed this action to this Court, plaintiff moved to remand the case to state court. By Memorandum and Order dated December 8, 2010, this Court denied plaintiff's motion to remand, holding that plaintiff's NYSHRL claim, as pled, was completely preempted by ERISA and, therefore, was properly removed to federal court. *See generally Schultz v. Tribune*, 754 F. Supp. 2d 550 (E.D.N.Y. 2010) ("*Schultz II*"). In particular, the Court held that plaintiff's claim that his employment was terminated solely for the purpose of depriving him of disability benefits was a benefits deprivation claim that fell squarely within the scope of § 510 and § 502 of ERISA and, thus, was completely preempted by ERISA. *Id.* at 560-61. Accordingly, the Court held that defendant's removal of the case was proper under the complete preemption doctrine. *Id.* at 560. In so holding, the Court explained:

> [A] review of the Amended Complaint clearly demonstrates that plaintiff's only allegations relate to his claim that Newsday terminated his employment solely for the purpose of preventing him from receiving disability benefits. . . . Although plaintiff has labeled his claim as a disability discrimination claim arising under the NYSHRL, he has alleged no specific instances of discrimination that arise separate from his benefits termination claim, and, to the contrary, alleges that the "sole reason" Newsday terminated him was to deprive him of his disability benefits.

*Id.* at 560-61.

In addition, because plaintiff's NYSHRL claim in the instant case was based upon an entirely different theory than plaintiff's original NYSHRL claim in *Schultz I*, the Court rejected plaintiff's argument that he was not bringing an ERISA claim and, instead, was merely seeking to litigate the NYSHRL claim that Judge Block dismissed without prejudice in *Schultz I*. *Id.* at 561 n.8. Specifically, the Court noted that, while plaintiff's NYSHRL claim in *Schultz I* was predicated upon Newsday's alleged "refusal to accommodate plaintiff's disability and upon the allegation that Newsday 'systematically terminat[ed] [plaintiff's] employment because of such disability,'" the NYSHRL claim in the current case was based upon the allegation that Newsday terminated plaintiff solely to avoid paying plaintiff's disability benefits. *Id.* (internal citation omitted).

Accordingly, the Court held that plaintiff's NYSHRL claim was completely preempted by ERISA, and the Court thus denied plaintiff's motion to remand.

3. Motion to Dismiss

Defendant filed its motion to dismiss on January 10, 2011. Plaintiff filed his opposition on March 3, 2011. Defendant

4

filed its reply on March 18, 2011. This matter is fully submitted, and the Court has considered all of the arguments of the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556 (internal citations omitted)).

## III. DISCUSSION

Defendant argues that plaintiff's current claim, construed as an ERISA claim under the complete preemption doctrine, must be dismissed under the doctrine of *res judicata*, given Judge Block's dismissal of plaintiff's ERISA claim in the prior action. Plaintiff argues in response that this Court should allow plaintiff to amend his complaint to avoid ERISA preemption and properly state a discrimination claim under the NYSHRL. Defendant argues that any amendment by plaintiff would be futile because, *inter alia*, plaintiff's NYSHRL claim is precluded by collateral estoppel and is barred by the statute of limitations. For the reasons set forth herein, the Court agrees with defendant and grants defendant's motion to dismiss in its entirety.

### A. *Res Judicata*

#### 1. Legal Standard

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment. *See Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *see also Wilson v. Ltd. Brands*, No. 08 CV 3431 (LAP), 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009) (granting judgment on the pleadings based on collateral estoppel); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)

5

("[T]he defense of *res judicata* or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment.").

Under the doctrine of *res judicata*, otherwise known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (emphasis in original) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine applies only if "1) the previous action involved an adjudication on the merits; 2) the previous action involved the plaintiffs or those in privity with them; [and] 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). "In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit. . . ." *Id*. (citations omitted). Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty*, 199 F.3d at 613.

2. Application

As an initial matter, given the Court's conclusion in *Schultz II* that plaintiff's NYSHRL claim was completely preempted by ERISA, plaintiff's claim is properly construed for purposes of the Court's present analysis as an ERISA claim. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276 (2d Cir. 2005) ("When a state-law claim is removed to federal court because a section of . . . ERISA . . . preempts it, the district court may then adjudicate the claim on the merits under the relevant preemptive statute."). Construed as such, it is clear that plaintiff's ERISA claim is precluded under the doctrine *res judicata*.

In *Schultz I*, Judge Block dismissed plaintiff's ERISA claim based upon two alternative grounds. First, Judge Block found that this claim must be dismissed because plaintiff had made no showing that he had exhausted his administrative remedies with respect to any benefits protected by ERISA. 2009 WL 3246737, at *3-4. Second, even assuming *arguendo* that plaintiff had exhausted his administrative remedies, Judge Block concluded that plaintiff's ERISA claim failed on the merits, because plaintiff had neither "offer[ed] any evidence that anyone at Newsday intended to deprive him of benefits protected by ERISA," nor "point[ed] to any decision made by an administrator of Newsday's short or long-term disability benefits that was 'arbitrary and capricious.'" *Id.* at *4 (citation omitted).

In the current case, plaintiff has changed the theory of his ERISA claim and has presented the precise claim that he failed to present in *Schultz I*. Specifically, while in *Schultz I* plaintiff "contend[ed] that he was terminated because of his threats to blow the whistle on the circulation scandal, [and] not because of any reason related to his short or long-term disability benefits," *id.* at *4, here, plaintiff claims that the "sole reason" he was terminated "was to prevent him while disabled from receiving short term . . . and life time long term disability benefits." (Am. Compl. ¶ 24; *see also id.* ¶¶ 19, 25.)

6

Nevertheless, despite the change in theory, plaintiff's current ERISA claim is precluded under the doctrine of *res judicata*. As noted *supra*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Flaherty*, 199 F.3d at 612 (emphasis in original) (internal quotation marks and citation omitted). In *Schultz I*, plaintiff clearly could have raised the issue that he was terminated by Newsday for the purpose of depriving him of his disability benefits. Indeed, it was his failure to raise this issue that led Judge Block to conclude that his ERISA claim failed on the merits. Moreover, the previous action not only involved a determination on the merits, but also involved the exact same parties as in this action. Accordingly, all three requirements for the application of *res judicata* are satisfied here, and plaintiff's present claim therefore is precluded.

B. Request to Amend[4]

In response, plaintiff has requested leave to file a Second Amended Complaint (the "Proposed SAC") in order to avoid both preemption under ERISA and preclusion under the *res judicata* doctrine.

---

[4] Although the Court has dismissed the pending claim (which, although it is asserted as a state claim, is properly treated as an ERISA claim because of preemption), the Court in its discretion will exercise supplemental jurisdiction to consider the motion to amend to add another state claim (to the extent that plaintiff is trying to assert a different state claim that would not be preempted by ERISA). The Court exercises supplemental jurisdiction over this proposed state claim—in the interests of judicial economy, convenience, fairness, and comity—given that this case has already been litigated in federal court in two actions for many years, and it is abundantly clear that the proposed state claim in the Second Amended Complaint cannot survive a motion to dismiss because it would be time-barred and also precluded by the doctrine of collateral estoppel. *See, e.g.*, *Mauro v. S. New Eng. Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000) (affirming district court's decision to retain jurisdiction over state claims after dismissal of the sole federal claim because declining supplemental jurisdiction "would have furthered neither fairness nor judicial efficiency" and the state claims did not involve "any novel or unsettled issues of state law"); *Cnty. of Washington v. Cntys. of Warren & Washington Indus. Dev. Agency*, No. 93-CV-0086 (FJS), 1997 WL 152001, at *7 (N.D.N.Y. Mar. 31, 1997) (exercising supplemental jurisdiction over state-law claims) ("Because the parties in this case have been litigating this matter in federal court for more than four years, the Court will retain jurisdiction over the Plaintiff's supplemental claims in the interests of judicial economy and fairness to the litigants."), *aff'd* 2 F. App'x 71 (2d Cir. 2001); *see also Sullivan v. Chappius*, 711 F. Supp. 2d 279, 286 (W.D.N.Y. 2010) ("In the case at bar, it would hardly promote the interests of fairness or judicial economy to leave the door open for plaintiff to refile his HRL claim in state court, and require defendants to litigate there, when that claim is so obviously lacking in merit."); *Pu v. Charles H. Greenthal Mgmt. Corp.*, No. 08 Civ. 10084, 2010 WL 774335, at *5 (S.D.N.Y. Mar. 9, 2010) (concluding that to allow plaintiff "another opportunity to press his frivlous case against defendants in state court would contravene principles of judicial economy, fairness, and sound judgment," and that "[t]o avoid further waste of judicial resources, the Court exercises its discretion under 28 U.S.C. § 1367 to dismiss the state law claims on their merits"); *Kashelkar v. Bluestone*, No. 06 Civ. 8323, 2007 WL 2809874, at *2 (S.D.N.Y. Sept. 26, 2007) ("[I]t is appropriate to exercise supplemental jurisdiction to rule on the merits of Plaintiff's state claims notwithstanding the dismissal of the federal claims, because all of the claims arise from the same set of operative facts and are plainly lacking in merit, and because the interests of justice would not be served by requiring Defendants oppose those claims in a new state court litigation.").

Specifically, plaintiff claims that the SAC will "make it abundantly clear" that the deprivation of plaintiff's benefits merely was "a *consequence* of his wrongful discharge," rather than the sole motivating purpose for plaintiff's discharge. (Giaimo Aff. ¶¶ 9-11 (emphasis in original).) Moreover, plaintiff adds a discrimination-based allegation to the Proposed SAC, namely, that Newsday discriminated against him "by terminating him *solely because of his absence from employment* the consequence of which resulted in the deprivation of his short term and long term disability benefits." (SAC ¶ 27 (emphasis added).)

Even assuming *arguendo* that, first, plaintiff is allowed to amend his complaint to avoid ERISA preemption[5] and, second, that these amendments would, in fact, avoid preemption and would state a valid NYSHRL claim, the Court finds that granting leave to amend would be futile in this case. First, any NYSHRL claim would be precluded under the doctrine of collateral estoppel. Second, plaintiff's NYSHRL claim is time-barred under the applicable statute of limitations.[6] Accordingly, the Court denies plaintiff leave to amend and dismisses the Amended Complaint in its entirety.

1. Collateral Estoppel

a. Legal Standard

"'[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Leather v. Ten Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial

---

[5] As a general matter, a plaintiff may amend a complaint to avoid preemption under ERISA. *See, e.g.*, *Losquadro v. FGH Realty Credit Corp.*, 959 F. Supp. 152, 159-60 (E.D.N.Y. 1997) (finding state-law claim to be preempted by ERISA but providing plaintiff with leave to replead his cause of action); *Shackelton v. Conn. Gen. Life Ins. Co.*, 817 F. Supp. 277, 284 (N.D.N.Y. 1993) (providing plaintiff with leave to amend his complaint to avoid ERISA preemption). However, when a claim is removed under the doctrine of complete preemption, the removed claim is transformed into a federal claim under the applicable preemptive statute. *See Sullivan*, 424 F.3d at 276; *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002) ("[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502. What was a state claim for breach of contract becomes a federal claim for the enforcement of contractual rights under § 502(a)(1)(B)."). Accordingly, under this framework, there is no longer an NYSHRL claim in plaintiff's complaint for him to amend. In any event, as discussed more fully *infra*, even if plaintiff could amend his claims to add a different NYSHRL cause of action that would not be preempted, that cause of action nevertheless would be barred. Therefore, as discussed herein, plaintiff's motion to amend is denied.

[6] Defendant also contends that plaintiff's NYSHRL claim would fail as a matter of law because plaintiff cannot allege that, despite his disability, he was able to perform his job. (Def.'s Mem. of Law at 9-10.) However, the Court need not reach the merits of plaintiff's claim because, for the reasons set forth herein, his claim is barred both by collateral estoppel and by the statute of limitations. Accordingly, the Court will not address this argument in ruling on defendant's motion to dismiss.

8

economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). If the prior judgment was rendered in federal court, as is the case here, the principles of collateral estoppel require that "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

b. Application

Defendant argues that plaintiff is collaterally estopped from arguing a necessary element of any NYSHRL claim—namely, that he could perform his job with reasonable accommodations—because this issue was litigated and necessarily decided against plaintiff in *Schultz I*. (Defs.' Mem. of Law at 6-8.) Plaintiff does not present any arguments in opposition.

The Court finds that all four elements of collateral estoppel are satisfied here. First, the identical issue—that is, plaintiff's ability to perform the essential functions of his position with reasonable accommodation—has been raised in both the current case and the prior proceeding. Specifically, although Judge Block addressed the merits of only plaintiff's ADA claim and, as already noted, did not reach the merits of plaintiff's NYSHRL claim, a disability discrimination claim under the NYSHRL is governed by the same legal standards as govern an ADA claim. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000). Thus, the elements a plaintiff must establish in order to state a *prima facie* claim under either statute are the same, namely, that: (1) plaintiff was an individual who had a disability within the meaning of the statute; (2) plaintiff's employer had notice of his disability; (3) with reasonable accommodation plaintiff could perform the essential functions of the position sought; and (4) the employer refused to make such accommodations. *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999). In dismissing plaintiff's ADA claim, Judge Block specifically found that plaintiff could not "establish that he could perform the essential functions of his job with or without such an accommodation." *Schultz I*, 2009 WL 3246737, at *4. In so holding, Judge Block explained:

> Schultz has been found by the Social Security Administration to be disabled as of July 31, 2004. To succeed on a claim under the ADA, Schultz would have to prove that he was capable of returning to his work at Newsday when he was fired. The Administration's factual determination that Schultz could not perform his former work estops him from doing so.

*Id.* (internal citations omitted). Likewise, in this case, plaintiff has alleged in his Amended Complaint that "[o]n or about July 26, 2006, the Social Security Administration held in a written decision that plaintiff became permanently disabled on July 31, 2004." (Am. Compl. ¶ 12.) Thus, the identical issue regarding plaintiff's permanent disability and his ability to perform the essential functions of his job with or without a reasonable accommodation was raised in both the current case and the prior action.

Moreover, as indicated by the above-discussion, this issue was actually litigated and decided by Judge Block in defendant's

9

favor in the previous proceeding.  Plaintiff also had a full and fair opportunity to litigate the issue, given that his claim was dismissed only on summary judgment after the parties had engaged in discovery.  Finally, the resolution of this issue was necessary to support a valid and final judgment on the merits, given that the ability to perform the essential functions of the position sought is a necessary element of an ADA (and NYSHRL) claim.

In sum, the Court finds that plaintiff is collaterally estopped from arguing here that he could perform the essential functions of his position with reasonable accommodations.  Consequently, because plaintiff is estopped from arguing a necessary element of an NYSHRL claim, the Court concludes that granting plaintiff leave to replead this claim would be futile, and defendant's motion to dismiss this claim is granted.

2.  Statute of Limitations

Defendant contends that leave to replead should also be denied as futile because any amended claims would be time-barred.  The Court agrees.  Under New York law:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period.

N.Y. C.P.L.R. § 205(a).  Accordingly, given that plaintiff's NYSHRL claim was dismissed without prejudice to renewal in state court, plaintiff had six months from the date of dismissal to both file and serve his complaint in state court.  Thus, given that his claim was dismissed on October 7, 2009, plaintiff had until April 7, 2010 to both file and serve his complaint.  However, although the complaint he filed in state court is dated April 6, 2010, plaintiff did not actually file the summons and complaint until April 8, 2010, (*see* Def.'s Ex. A[7]) and did not serve

---

[7] The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859, 2005 WL 1139908, at *2–3, (E.D.N.Y. May 13, 2005)

defendant until May 14, 2010. (Notice of Removal ¶ 7.) In addition, because the three-year statute of limitations that would otherwise apply to an NYSHRL claim has already expired, plaintiff would no longer be able to file a new NYSHRL claim in state court. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) (noting three-year statute of limitations for NYSHRL claims). Accordingly, plaintiff's claim is time-barred under New York law, and granting plaintiff leave to amend would be futile.

### III. CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss the Amended Complaint is granted in its entirety. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 14, 2011
       Central Islip, New York

\* \* \*

The attorneys for plaintiff are Joseph O. Giaimo and Jade L. Fuller of Giaimo Associates, LLP, 80-02 Kew Gardens Road, Kew Gardens, NY 11415. The attorneys for defendant are Cliff Fonstein, Eric Hoffman, and Adam McClay of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019.

---

(stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss). Here, the minute entry referred to by the Court clearly contains information that is within plaintiff's knowledge and possession and is within the public domain. Accordingly, the Court is entitled to consider it in ruling on defendant's motion to dismiss.